**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| **State of Oklahoma, et al.,** | |
| Petitioners, | |
| | Case No. 24-1125 |
| **v.** | (Consolidated with Case No. 24-1127) |
| **United States Environmental Protection Agency, et al.,** | |
| Respondents. | |

On Petition for Review of Final Action of the United States
Environmental Protection Agency

**<u>UNOPPOSED MOTION FOR LEAVE TO INTERVENE AS
RESPONDENTS</u>**

Pursuant to Federal Rule of Appellate Procedure 15(d) and

Circuit Rule 15(b), New York and the additional undersigned

States and Municipalities (the "Movant State and Local

Governments") move to intervene in support of the Environmental

Protection Agency ("EPA") in litigation challenging a federal rule

that revises the Risk Management Program under section 112(r)

of the Clean Air Act, 42 U.S.C. § 7412(r). Movant State and Local

Governments seek to intervene to defend the regulations, which

would further protect vulnerable communities from chemical

1

accidents, especially those living near facilities in industry sectors with high accident rates. The states and industry groups ("State and Industry Petitioners") challenging the rule, as well as EPA, take no position on the motion.

## BACKGROUND

This case involves petitions filed by State and Industry Petitioners challenging EPA's final rule entitled "Accidental Release Prevention Requirements: Risk Management Programs Under the Clean Air Act; Safer Communities by Chemical Accident Prevention," published at 89 Fed. Reg. 17,622 (Mar. 11, 2024) ("Rule"). EPA promulgated the Rule pursuant to its authority in section 112(r) of the Clean Air Act. *See* 42 U.S.C. § 7412(r).

### The Risk Management Program

Congress enacted section 112(r) of the Clean Air Act in 1990 in the aftermath of the 1984 accident at the Union Carbide plant in Bhopal, India, where more than 3,000 people died after a tank leaked a toxic chemical that the facility used to manufacture pesticides. *See* H.R. Rep. No. 101-490 at 154-57 (citing the Bhopal incident in support of the need to amend the statute). In section

112(r), Congress directed EPA to issue regulations that "provide, to the greatest extent practicable, for the prevention and detection of accidental releases of regulated substances and for the response to such releases by the owners and operators of the sources." 42 U.S.C. § 7412(r)(7)(B).

EPA issued initial regulations pursuant to section 112(r)(7) in 1994 and 1996 that established the list of chemical substances with threshold quantities regulated under the program and that required facilities to comply with safeguards to prevent and mitigate accidental releases, respectively. 59 Fed. Reg. 4,478 (Jan. 31, 1994) & 61 Fed. Reg. 31,668 (June 20, 1996). The regulations require facilities to conduct a worst-case scenario analysis and a review of accident history, coordinate procedures with local emergency response organizations, conduct a hazard assessment, document a management system, implement a prevention program and emergency response program, and submit a risk management plan that addresses all covered processes and chemicals. 87 Fed. Reg. at 53,562-63.

**The 2017 Chemical Disaster Rule**

Prompted by concerns that the initial regulations did not provide sufficient protections against chemical accidents, as borne out by tragic accidents at West Fertilizer in Texas that killed 15 people in 2013 and a refinery explosion in 2010 in Washington State that killed seven, President Obama issued an executive order in 2013 that required EPA and other federal agencies to review—and consider strengthening—regulations to prevent or mitigate chemical accidents. *See* Executive Order 13,650: Improving Chemical Facility Safety and Security (Aug. 1, 2013).[1]

In March 2016, EPA issued a notice of proposed rulemaking to amend the accidental release prevention regulations and related programs. *Accidental Release Prevention Requirements: Risk Management Programs Under the Clean Air Act*, 81 Fed. Reg. 13,638 (Mar. 14, 2016). In January 2017, EPA promulgated the final rule to "improve safety at facilities that use and distribute hazardous chemicals." *Accidental Release Prevention*

---

[1] Available at: https://obamawhitehouse.archives.gov/the-press-office/2013/08/01/executive-order-improving-chemical-facility-safety-and-security.

*Requirements: Risk Management Programs under the Clean Air Act* ("2017 Chemical Disaster Rule"), 82 Fed. Reg. 4594 (Jan. 13, 2017). The 2017 Chemical Disaster Rule strengthened the regulatory requirements in three major areas: (1) accident prevention, including expanded post-accident investigations, more rigorous safety audits, safety training, and safer technology alternatives requirements; (2) emergency response, including more frequent coordination with local first responders and emergency response committees, and more intensive incident-response exercises; and (3) public information disclosure, including enhanced disclosure of safety information and public-meeting requirements. *Air All. Houston v. EPA*, 906 F.3d 1049, 1055-56 (D.C. Cir. 2018).

## The 2019 Rule and Litigation

After EPA unsuccessfully attempted to delay the effective date of the 2017 Chemical Disaster Rule by two years following a change in Administration, see *Air. All. Houston*, 906 F.3d at 1053, the agency proposed to eliminate several of the rule's safeguards. In May 2018, EPA proposed repealing critical aspects of the 2017 Chemical Disaster Rule, including almost all of the accident

prevention requirements. *Accidental Release Prevention Requirements: Risk Management Programs Under the Clean Air Act*, 83 Fed. Reg. 24,850, 25,852 (May 30, 2018). EPA proposed to weaken post-accident investigations, eliminate all requirements for third-party compliance audits, decrease safety training, and eliminate the obligation to perform safer technology and alternatives analysis. *Id.* at 24,857-58. EPA also proposed to limit the information facilities must provide annually to emergency responders and to remove the minimum frequency requirement for field exercises or, alternatively, rescind the field and tabletop exercise requirements entirely. *Id.* at 24,853. As to the public information disclosure requirements, the agency proposed to curtail the scope of the information that facilities are required to share with the public about chemical hazards. *Id.*

In December 2019, EPA published the final rule, *Accidental Release Prevention Requirements: Risk Management Programs Under the Clean Air Act*, 84 Fed. Reg. 69,834 (Dec. 19, 2019). The 2019 rule followed through on the proposal, repealing the 2017 Chemical Disaster Rule's requirements on safer technology and alternatives analysis, third-party audits, and incident

investigation. *Id.* at 69,836. Several of the Movant State and Local Governments, community and environmental groups, and the United Steelworkers filed petitions for review in the D.C. Circuit.[2]

**The Rule at Issue**

After the change in Presidential administrations in 2021, EPA announced that it intended to initiate new notice and comment proceedings to review and potentially revise the 2019 rule.

Meanwhile, serious chemical accidents continued to occur. For example, the Chemical Safety and Hazard Investigation Board and many public listening session commenters identified the August 2017 Arkema, Inc., chemical plant fire in Crosby, Texas, as a significant accident caused by natural hazards, namely flooding from Hurricane Harvey. *See* 87 Fed. Reg. 53,568

---

[2] *See State of New York, et al. v. Andrew Wheeler, et al.*, Case No. 20-1022 (D.C. Cir.); *State of Delaware v. EPA, et al.*, Case No. 20-1034 (D.C. Cir. 2020); *United Steel, Paper and Forest v. EPA, et al.*, Case No. 20-1005 (D.C. Cir. 2020); *Air Alliance Houston, et al v. EPA, et al*, Case No. 19-1260 (D.C. Cir.).

(Aug. 31, 2022). That accident resulted in 21 people seeking medical attention and 200 nearby residents being evacuated. *Id.*

On August 18, 2022, after soliciting public comment, EPA issued a proposed rule. *See* 87 Fed. Reg. 53,556 (Aug. 31, 2022). After receiving and considering public comments, EPA finalized the Rule, which restored the main provisions from the 2017 Chemical Disaster Rule and improved on that rule in several respects.

As to accident prevention, the Rule includes the requirements contained in the 2017 Chemical Disaster Rule with several changes and amplifications, including the following:

- ***Safer Technologies and Alternatives Analysis.*** The Rule restores the 2017 Chemical Disaster Rule's obligation for certain types of facilities (including chemical manufacturers and petroleum refiners) to conduct a safer technologies and alternatives analysis, and goes a step further by requiring the implementation of at least one feasible measure. *See* 40 C.F.R. §§ 68.3, 68.67(c)(9) and (h).

- ***Third-Party Compliance Audits and Root Cause Analysis.*** The Rule requires third-party compliance audits and root cause

analysis incident investigations for facilities with a prior accident. *See* 40 C.F.R. §§ 68.3, 68.58, 68.79, 68.80; 40 C.F.R. §§ 68.3, 68.60, 68.81.

The Rule also added other accident prevention requirements, including the following:

- ***Employee Participation.*** The Rule encourages employee participation, training, and opportunities for employee decision making. For example, the Rule allows partial or complete process shutdowns based on the potential for a catastrophic release. The Rule also implements a process to allow employees and their representatives to anonymously report specific unaddressed hazards or other noncompliance. *See* 40 C.F.R. §§ 68.62, 68.83.

- ***Natural Hazards.*** The Rule requires evaluation of the risks of natural hazards and climate change, including any associated loss of power. *See* 40 C.F.R. §§ 68.3, 68.50, 68.67, 68.170, 68.175.

As to emergency response, the Rule includes requirements similar to those contained in the 2017 Chemical Disaster Rule with respect to incident-response exercises. 40 C.F.R. § 68.96(b).

The Rule also added other requirements that ensure the timely sharing of chemical release information with local responders and implement a community notification system to warn the community surrounding a facility of an impending chemical release. *See* 40 C.F.R. §§ 68.90(b), 68.95(a) and (c).

As to public information disclosure, similar to the 2017 Chemical Disaster Rule, the Rule provides access to nearby communities to certain chemical hazard information. *See* 40 C.F.R. § 68.210.

*This Litigation*

State and Industry Petitioners filed petitions for review on May 9 and 10, 2024, challenging the Rule. *See* ECF Doc. Nos. 2053737, 2054427. Before filing this motion, counsel for the Movant State and Local Governments contacted counsel for State and Industry Petitioners and for EPA. State and Industry Petitioners, as well as EPA, take no position on the motion.

## LEGAL STANDARD

Federal Rule of Appellate Procedure 15(d) authorizes intervention in circuit court proceedings to review agency actions on a motion containing "a concise statement of interest of the

moving party and the grounds for intervention" that is filed within 30 days after the petition for review. In determining whether to grant intervention, this Court typically draws on the policies underlying Federal Rule of Civil Procedure 24. *See Mass. Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997).

Under Federal Rule of Civil Procedure 24, a party seeking to intervene as of right must satisfy four factors: 1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest. *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015); *see also Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1233 (D.C. Cir. 2018) (looking "to the timeliness of the motion to intervene and whether the existing parties can be expected to vindicate the would-be intervenor's interests"). A party that satisfies the requirements of Rule 24(a) will also meet the standing requirement under Article III of the Constitution. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003).

A court may also grant permissive intervention when a movant makes a timely application and the applicant's claim or defense and the main action have a question of law or fact in common. Fed. Rule Civ. Proc. 24(b)(1); *see EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

## ARGUMENT

### I. MOVANT STATE AND LOCAL GOVERNMENTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Movant State and Local Governments easily satisfy the Federal Rule of Appellate Procedure 15(d) standard for intervention and the showings required for intervention as of right under Federal Rule of Civil Procedure 24(a)(2). First, this motion is timely filed within 30 days of the filing of the petitions for review. *See* Fed. Rule App. Proc. 15(d). Second, Movant State and Local Governments have legally protected interests in the reduction and mitigation of chemical accidents that the Rule provides. *See Air All. Houston*, 906 F.3d at 1059-60. Third, Movants' legally protected interests would be impaired by the petitions here. *See Crossroads Grassroots*, 788 F.3d at 320. Finally, no existing party to the action can adequately represent

Movant State and Local Governments' unique quasi-sovereign and proprietary interests. *See id. at 321.*

### A. Movant State and Local Governments Have Legally Protected Interests in the Rule that Would Be Impaired if the Petitions are Granted.

Movant State and Local Governments have longstanding, legally protected interests in reducing and mitigating chemical accidents that harm our residents' health, contaminate our natural resources, and damage our economies. *See Air All. Houston*, 906 F.3d at 1059-60 (citing Washington state's incurring of response costs from responding to a refinery accident and concluding that "State Petitioners have demonstrated their independent proprietary interests in avoiding chemical releases in their territory sufficient to support standing"); *see Massachusetts v. EPA*, 549 U.S. 497, 521-23 (2007) (recognizing states' interests in protecting their territory and residents from harmful pollution).

Between 2016 and 2020, there were 488 reportable accidents with onsite impacts at Risk Management Program facilities across the country, including in many of our jurisdictions, and 133 of those accidents also had offsite impacts. Regulatory Impact Analysis, Aug. 30, 2023, EPA-HQ-OLEM-2022-0174-0582, at 41-

42. Together, these accidents resulted in 18 deaths, 575 onsite injuries, 85,808 people sheltering in place, and approximately 2.4 billion dollars of property damage. *Id.* Because major and serious chemical accidents continue to happen, the Rule aims "to better identify and further regulate risky facilities to prevent accidental releases before they can occur." 89 Fed. Reg. at 17,623. EPA determined that implementation of the Rule "will improve the health and safety protection provided by the [Risk Management Program] rule and result in a reduced frequency and magnitude of damages from releases, including damages . . . such as fatalities, injuries, property damage, hospitalizations, medical treatment, [and] sheltering in place." 89 Fed. Reg. at 17,628.

By preventing and mitigating chemical accidents, the Rule protects the welfare of the Movant State and Local Governments' residents who live near and work at facilities subject to the Rule, and also protects the environment and natural resources surrounding those facilities. By preventing and mitigating chemical accidents, the Rule also reduces the cost to Movant State and Local Governments of responding to and investigating those

accidents, and treating illnesses and injuries caused by those accidents.

These concrete regulatory, environmental, and economic interests would be impaired were this Court to grant the Petitions. Although State and Industry Petitioners have not yet identified in court filings any specific portion of the Rule they claim is unlawful, their rulemaking comments signal that they will likely challenge many aspects of the Rule. For example, Industry Petitioners have indicated their opposition to the Safer Technology Alternatives Analysis, root cause analysis, third-party audit, and natural hazard assessment requirements of the Rule. *See e.g.*, Comments of the American Petroleum Institute, Oct. 31, 2022, EPA-HQ-OLEM-2022-0174-0233.

The four provisions opposed by Industry Petitioners are central to the Rule's aim of preventing accidents. First, the Safer Technology Alternatives Analysis is targeted at industries— petroleum and coal products manufacturing and chemical manufacturing—that experience more frequent accidental releases. 87 Fed. Reg. at 53,577. EPA expects that this provision will help to "ameliorate the upper end of the distribution of

accident magnitudes so that the highest impact accidents are less likely." Regulatory Impact Analysis, EPA-HQ-OLEM-2022-0174-0582, at 91. Second, EPA expects the root cause analysis provision "to prevent future accidents by identifying the underlying causes and corrective actions for serious accidents." *Id.* at 81. Third, the third-party audit requirement ensures that auditors will be independent of the facilities they are auditing, increasing "the likelihood that audits will result in identification of safety problems and necessary process improvements before such deficiencies can result in accidents." *Id.* at 82. Fourth, the natural hazard assessment provision is expected to "prevent the potential consequences of accidents at regulated facilities as the result of natural hazards," including climate change-related weather events. *Id.*

Movant State and Local Governments' interests in these core components of the Rule, as described above, would be impaired if the petitions are granted and the Rule set aside, making intervention warranted here. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003) (determining that intervention in administrative review proceedings is appropriate

where movant would be harmed by successful challenge to regulatory action and that harm could be avoided by ruling denying relief sought by petitioner).

### B.  Movant State and Local Governments' Interests Are Not Adequately Represented.

Movant State and Local Governments also satisfy the fourth and final factor of Federal Rule of Civil Procedure 24(a) because no existing party in the case can vindicate their interests. This requirement is "not onerous," and a "movant ordinarily should be allowed to intervene unless it is clear that" existing parties "will provide adequate representation." *Crossroads Grassroots*, 788 F.3d at 321. "[G]eneral alignment" between would-be intervenors and existing parties is not dispositive. *Id.*

Movant State and Local Governments readily satisfy this "minimal burden" because their interests are not adequately represented by the other parties. Although Movants would be joining EPA in defending the Rule in the litigation, Movant State and Local Governments have important interests that are distinct from EPA's interests. Specifically, as described above, in addition to quasi-sovereign interests in protecting the health and safety of

17

our residents from chemical accidents, Movant State and Local Governments have proprietary interests in decreasing the costs of responding to and investigating accidents and in preventing harm to state-owned natural resources.

These interests are distinct from EPA's interests in promulgating and defending the Rule, even if Movant State and Local Governments and EPA are generally aligned in contending that the petitions should be denied. As a result, EPA and Movant State and Local Governments may choose to advance different arguments or make different strategic choices in this litigation. Movants therefore satisfy this final requirement for intervention as of right.

### C. For the Same Reasons, Movant State and Local Governments Have Article III Standing.

As this Court has observed, "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder*, 333 F.3d at 233; *see also Crossroads Grassroots*, 788 F.3d at 320. Thus, for the same reasons that Movant States and Local Governments satisfy Federal Rule of Civil Procedure 24(a)'s

standard for intervention as of right, they have Article III standing.

Indeed, Movant State and Local Governments meet each of the required elements of Article III standing. This Court's "cases have generally found a sufficient injury in fact [for a respondent intervenor] where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots*, 788 F.3d at 317.

As described above, Movant State and Local Governments will benefit from the reduction and mitigation of chemical accidents brought about by the Rule, and a decision in favor of the State and Industry Petitioners would remove those benefits, thereby establishing an injury-in-fact here.

This injury to Movant State and Local Governments is "directly traceable" to Petitioners' challenge to the Rule, and a successful defense of the Rule would thus "prevent the injury," establishing the requisite causation and redressability. *Air All. Houston*, 906 F.3d at 1059-60; *Crossroads Grassroots*, 788 F.3d at 316; *see also Fund for Animals*, 322 F.3d at 733.

## II. ALTERNATIVELY, MOVANT STATE AND LOCAL GOVERNMENTS ARE ENTITLED TO PERMISSIVE INTERVENTION.

Movant State and Local Governments also satisfy the requirements for permissive intervention. Under Federal Rule of Civil Procedure 24(b)(1), courts may "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact" so long as the motion is timely and intervention would not "unduly delay or prejudice the rights of the original parties." Fed. Rule Civ. Proc. 24(b)(1)(B), (3).

Movant State and Local Governments' defense of the Rule will share questions of law with the challenges that State and Industry Petitioners will raise against the Rule. And as it is timely filed within 30 days of the petitions, intervention at this early stage in the litigation will not cause any delay or prejudice. *See Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1236 (D.C. Cir. 2004) (holding that existing parties would not be prejudiced by any "issue proliferation" because proposed intervenors had already submitted comments on relevant issues that were considered in the underlying decision).

## CONCLUSION

For the foregoing reasons, we respectfully request that this Court grant this motion to intervene.

Dated: June 7, 2024                                        Respectfully submitted,

FOR THE STATE OF NEW YORK

LETITIA JAMES
Attorney General

*/s/ Sarah Kam*

By: _____
BARBARA D. UNDERWOOD
Solicitor General
JEFFREY LANG
Senior Assistant Solicitor General
MICHAEL J. MYERS
Senior Counsel
SARAH KAM
LAURA MIRMAN-HESLIN
Assistant Attorneys General
Environmental Protection Bureau
The Capitol
Albany, NY 12224
(518) 776-2382
Sarah.Kam@ag.ny.gov

FOR THE STATE OF
CONNECTICUT

WILLIAM TONG
Attorney General

*/s/ Jill Lacedonia*

By: _____

MATTHEW I. LEVINE
Deputy Associate Attorney
General
JILL LACEDONIA
Assistant Attorney General
Connecticut Office of the
Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
(860) 808-5250
jill.lacedonia@ct.gov

FOR THE STATE OF
DELAWARE

KATHLEEN JENNINGS
Attorney General

*/s/ Vanessa L. Kassab*

By: _____

CHRISTIAN DOUGLAS
WRIGHT
Director of Impact Litigation
RALPH K. DURSTEIN III
VANESSA L. KASSAB
Deputy Attorneys General
Delaware Department of
Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

FOR THE STATE OF
HAWAI'I

ANNE E. LOPEZ
Attorney General

/s/ *Lyle T. Leonard*

By: _____
LYLE T. LEONARD
Deputy Attorney General
465 S. King Street, #200
Honolulu, HI 96813
(808) 587-3050
lyle.t.leonard@hawaii.gov

FOR THE STATE OF
ILLINOIS

KWAME RAOUL
Attorney General

*/s/ Jason E. James*

By: _____
JASON E. JAMES
Assistant Attorney General
MATTHEW J. DUNN
Chief, Environmental
Enforcement/ Asbestos
Litigation Division
Office of the Attorney General
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(872) 276-3583
jason.james@ilag.gov

FOR THE STATE OF MAINE

AARON M. FREY
Attorney General

*/s/ Emma Akrawi*

By: _____
EMMA AKRAWI
Assistant Attorney General
Natural Resources Division
6 State House Station
Augusta, ME 04333
(207) 626-8800
Emma.Akrawi@maine.gov

FOR THE STATE OF
MARYLAND

ANTHONY G. BROWN
Attorney General

*/s/ Steven J. Goldstein*

By: _____
STEVEN J. GOLDSTEIN
Special Assistant Attorney
General
Office of the Attorney General
of Maryland
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6414
sgoldstein@oag.state.md.us

FOR THE
COMMONWEALTH OF
MASSACHUSETTS

ANDREA CAMPBELL
Attorney General

*/s/ Turner Smith*

By: _____

TURNER SMITH
Assistant Attorney General &
Deputy Bureau Chief
EMILY FIELD
MICHELE HUNTON
Assistant Attorneys General
Environment and Energy
Bureau
Office of the Attorney General
One Ashburton Place, 18th
Floor
Boston, MA 02108
(617) 727-2200
Emily.Field@mass.gov
Turner.Smith@mass.gov

FOR THE PEOPLE OF THE
STATE OF MICHIGAN

DANA NESSEL
Attorney General

*/s/ Elizabeth Morrisseau*

By: _____

ELIZABETH MORRISSEAU
Assistant Attorney General
Environment, Natural
Resources, and
Agriculture Division
6th Floor G. Mennen Williams
Building
525 W. Ottawa Street
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
MorrisseauE@michigan.gov

FOR THE STATE OF MINNESOTA

KEITH ELLISON
Attorney General

*/s/ Peter N. Surdo*

By: _____
PETER N. SURDO
Special Assistant Attorney General
Minnesota Attorney General's Office
445 Minnesota Street
Town Square Tower Suite 1400
Saint Paul, Minnesota 55101
651.757.1061
Peter.Surdo@ag.state.mn.us

FOR THE STATE OF NEW JERSEY

MATTHEW J. PLATKIN
Attorney General

*/s/ Lisa J. Morelli*

By: _____
LISA J. MORELLI
Deputy Attorney General
New Jersey Division of Law
25 Market Street
Trenton, NY 08625
(609) 376-2740
Lisa.Morelli@law.njoag.gov

FOR THE STATE OF
OREGON

ELLEN F. ROSENBLUM
Attorney General

*/s/ Paul Garrahan*

By: _____

PAUL GARRAHAN
Attorney-in-Charge
STEVE NOVICK
Special Assistant Attorney
General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov
Steve.Novick@doj.oregon.gov

FOR THE COMMONWEALTH
OF PENNSYLVANIA

MICHELLE A. HENRY
Attorney General

*/s/ Ann R. Johnston*

By: _____

ANN R. JOHNSTON
Assistant Chief Deputy
Attorney General
Civil Environmental
Enforcement Unit
Office of Attorney General
Strawberry Square
14th Floor
Harrisburg, PA 17120
(717) 497-3678

ajohnston@attorneygeneral.gov

FOR THE STATE OF RHODE ISLAND

PETER F. NERONHA
Attorney General of Rhode Island

By: */s/ Alison Hoffman Carney*
_____
ALISON HOFFMAN CARNEY
Assistant Attorney General
Chief, Environment and Energy Unit
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 ext 2116
acarney@riag.ri.gov

FOR THE STATE OF VERMONT

CHARITY R. CLARK
Attorney General

By: */s/ Melanie Kehne*
_____
MELANIE KEHNE
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 752-9138
melanie.kehne@vermont.gov

FOR THE STATE OF
WASHINGTON

BOB FERGUSON
Attorney General

/s/ Sarah Reyneveld

By: _____

SARAH REYNEVELD
Managing Assistant Attorney
General
Environmental Protection
Division
Washington State Attorney
General's Office
800 5th Ave Suite 2000, TB-14
Seattle, WA 98104-3188
(206) 389-2126
sarah.reyneveld@atg.wa.gov

FOR THE STATE OF
WISCONSIN

JOSHUA L. KAUL
Attorney General

/s/ Tressie K. Kamp

By: _____

TRESSIE K. KAMP
Assistant Attorney General
17 W. Main Street
Madison, WI 53703
(608) 266-9595
kamptk@doj.state.wi.us

FOR THE DISTRICT OF
COLUMBIA

BRIAN L. SCHWALB
Attorney General

*/s/ Caroline S. Van Zile*

By: _____
CAROLINE S. VAN ZILE
Solicitor General
Office of the Attorney General
for the District of Columbia
400 6th Street, NW, Suite
8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

FOR HARRIS COUNTY,
TEXAS

CHRISTIAN D. MENEFEE
Harris County Attorney

*/s/ Sarah Jane Utley*

By: _____
SARAH J. UTLEY
Division Director,
Environmental
Harris County Attorney's
Office
1019 Congress, 15th Floor
Houston, Texas 77002
(713) 274-5124
(832) 596-9786
sarah.utley@harriscountytx.gov

# CERTIFICATE AS TO PARTIES AND AMICI

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), I hereby certify the parties and amici are as follows:

In case 24-1125, State Petitioners are State of Oklahoma, State of Alabama, State of Arkansas, State of Georgia, State of Kansas, Commonwealth of Kentucky, State of Mississippi, State of Missouri, State of Montana, State of Nebraska, State of South Carolina, State of Texas, State of Utah, and the Arizona Legislature.

In case 24-1125, respondents are United States Environmental Protection Agency and Michael S. Regan, Administrator of the Environmental Protection Agency.

In case 25-1127, Industry Petitioners are National Association of Chemical Distributors, d/b/a Alliance for Chemical Distribution, American Chemistry Council, American Fuel & Petrochemical Manufacturers, American Petroleum Institute, Chamber of Commerce of the United States of America, and Society of Chemical Manufacturers & Affiliates.

In case 25-1127, the respondent is the United States Environmental Protection Agency.

There are no amici that have appeared in the litigation.

/s/ Sarah Kam

_____

SARAH KAM

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this filing complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font. I further certify that the motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,387 words, excluding the parts of the motion exempted under Fed. R. App. P. 32(f), according to the count of Microsoft Word.

*/s/ Sarah Kam*

_____

Sarah Kam

**CERTIFICATE OF SERVICE**

I hereby certify that copies of the foregoing Unopposed Motion for Leave to Intervene as Respondents have been served through the Court's CM/ECF system on all registered counsel this 7th day of June, 2024.

*/s/ Sarah Kam*

_____

SARAH KAM